IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON M.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

Civ. No. 3:18-cv-00252-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Jason M. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are whether: (1) the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence in light of new evidence submitted to the Appeals Council; (2) the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony; and (3) the ALJ gave germane reasons for disregarding the lay witness's testimony.

    Because there is substantial evidence in the record to support the ALJ's findings, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on May 21, 2014, alleging disability since August 29, 2008. Tr. 19, 212–24. Both claims were denied initially and upon reconsideration. Tr. 19, 70, 71, 94, 95. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Rudolph Murgo on April 5, 2017. Tr. 19, 40–69. ALJ Murgo denied Plaintiff's claim by a written decision dated May 17, 2017. Tr. 16–30. Plaintiff sought review from the Appeals Council and was denied on December 6, 2017, rendering the ALJ's decision final. Tr. 1–6. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 31 years old at the time of his alleged disability onset and 40 at the time of his hearing. *See* tr. 40, 212, 219. Plaintiff completed high school and worked as a banquet server, assistant director of catering, appliance technician, and electronic appliances sales associate. Tr. 28, 47, 65–67, 250. Plaintiff alleges disability due to metastatic thyroid cancer, stage 1 thyroid carcinoma cancer, nerve damage, calcium deficit, thyroid removal, migraines, nausea, brain cyst, trigeminal neuralgia, chronic leg pain, eye problems, and chronic nausea. Tr. 72, 241.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the

administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## **I. New Evidence**

Plaintiff submitted two letters from Dr. Darren Lewis, M.D., his treating physician, to the Appeals Council after the ALJ issued his decision. Pl.'s Br. 1–2; tr. 1000–01. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision . . . that evidence becomes part of the administrative record, which the district court must consider when reviewing the . . . final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec.*

*Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (internal citation omitted). If the new evidence substantially changes the "record as a whole," the ALJ's decision may be said to no longer reflect substantial evidence in the record. *See id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

The ALJ gave limited weight to Dr. Lewis's earlier opinion that Plaintiff's nausea, facial twitching, and severe bilateral face pain may limit his concentration. Tr. 27; *see* tr. 999. The ALJ found that Dr. Lewis's opinion was vague, conclusory, tentative, and lacking specificity as to degree or severity. Tr. 27; *see* tr. 999. When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). The ALJ contrasted Dr. Lewis's opinion with Plaintiff's substantial daily activities and work for his parents since 2009, which showed no concentration limitations. Tr. 27; *see* tr. 48, 54–56, 999. The ALJ also found that Dr. Lewis did not document concentration issues in his treatment notes and Plaintiff rarely had nausea since January 2010. Tr. 27; *see* tr. 660–802. Substantial evidence supports the ALJ's findings. *See* tr. 660, 668–69, 672, 675, 678, 679, 702, 715, 720, 723, 727, 733 (noting various treatment notes that did not mention concentration and occasionally, if ever, mentioned nausea).

The new evidence faces similar issues. The first letter, dated July 25, 2014, says, "Due to medical issues it is in [Plaintiff's] best interest to be excused from jury duty." Tr. 1001. The Appeals Council found that there was no reasonable probability that this evidence would change the outcome of the ALJ's decision. Tr. 2. Like Dr. Lewis's earlier opinion, his 2014 letter is vague, conclusory, tentative, and lacking specificity. Dr. Lewis did not identify or explain any

specific condition or symptom. Dr. Lewis did not say whether Plaintiff was incapable of serving, and if so, why. Moreover, Plaintiff has offered no justification for affording this opinion greater weight than Dr. Lewis's earlier opinion.

The second letter, dated September 1, 2017, says that Plaintiff's "*most currently debilitating*" condition is chronic nausea, which is unpredictable and has no known triggers. Tr. 1000 (emphasis added). It says he "*is having* approximately 10 episodes a month" despite medication and is unable to work 2 or more times per month due to lack of function and concentration. *Id.* (emphasis added). The Appeals Council found that this evidence did not relate to the relevant period because it post-dated the ALJ's May 17, 2017 decision. Tr. 2. Indeed, the letter was written after the ALJ's decision, is entirely in present tense, and does not address Plaintiff's condition retroactively.

The ALJ's decision is supported by substantial evidence, even when considering the new evidence submitted to the Appeals Council.

## II. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036. The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the

asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. Plaintiff testified that he had waves of intense nausea after his cancer surgeries. Tr. 50. He said it was worse than in 2008 but about the same since 2009. Tr. 59–60. He said he did not know when it would happen or how long it would last. Tr. 50–51. It could last for a few hours or a few days. Tr. 51, 57, 60. He was still taking Zofran but sometimes vomited before he could get to it, which embarrassed him. Tr. 51, 57. He dog sat a couple days per month for his aunt, did odd jobs for

his neighbor every few months, helped his mother with her business—by running errands, delivering packages, shipping packages, and setting up and taking down her booth at dog shows—in exchange for room and board since 2009, and helped his father uninstall x-ray equipment for his business through 2016. Tr. 48, 54–56. He said he could not do any of these things or work around the house when he had nausea. Tr. 60. He takes his medication, goes to his room, and lies down in bed with a garbage can next to him, waiting for it to pass. Tr. 60. He said his medication prevents him from vomiting about 50% of the time, but he still gets waves of nausea. Tr. 61. He said he usually feels fatigue for about half an hour to an hour afterwards before feeling better. *Id.* He admitted he could work when he was not having these symptoms but has not tried to because of the inconsistency and unpredictability. Tr. 61–62.

The ALJ found that Plaintiff chose not to work in order to help his parents run their businesses for the last several years and "is capable of performing similar jobs in the national economy." Tr. 23. Plaintiff argues that he only ran errands and helped set up dog show booths for his mother's sewing business when he was feeling well, and that she made other arrangement when he was not. Pl.'s Br. 2. He also argues that he only helped with his father's x-ray service company once or twice every three months or so and would be rescheduled when needed. *Id.* He added that his father had not had the business for "quite some time." *Id.* Plaintiff relies on the vocational expert's testimony that he would be unemployable if he missed 2 or more days per month or was off task for 20% of the time. Pl.'s Br. 2; *see* tr. 68.

There is no evidence in the record that Plaintiff stopped working in order to help his parents. Regardless, Plaintiff did extensive work for his neighbor, aunt, mother, and father and admitted that he had no trouble working when he did not have nausea. *See* tr. 48, 54–56, 61–62.

Even if Plaintiff had more flexibility working for his parents than he would for a traditional employer, the objective medical evidence does not suggest that his nausea would render him absent 2 or more days per month or off task 20% of the time, as discussed below.

The ALJ also found that Plaintiff engaged in substantial daily activities that indicated good physical ability. Tr. 24. A claimant's daily activities may be grounds for an adverse credibility finding if he "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, Plaintiff said he had no problems walking or lifting 20 pounds when he was not experiencing symptoms. Tr. 52. He had no problems sitting, attended to his personal care, prepared meals, cleaned the house, vacuumed, shopped, did laundry, did yard work, took out the garbage, and went hiking. Tr. 53–55. These are substantial daily activities that contradict Plaintiff's limitations testimony.

Lastly, the ALJ found that Plaintiff's symptom testimony was not supported by the objective medical evidence of record. Tr. 24–27. Plaintiff argues that Dr. Lewis's 2017 letter—which says that Plaintiff has approximately 10 episodes of nausea per month and is unable to work 2 or more times per month—is evidence of his claim that nausea would preclude him from working. Pl.'s Br. 1–2; *see* tr. 1000. As discussed above, the ALJ gave limited weight to Dr. Lewis's earlier medical opinion and the Appeals Council found that the 2017 letter does not

apply to the relevant period. Plaintiff has not challenged either of these findings. Regardless, the record as a whole does not support Plaintiff's claims of debilitating nausea. *See* tr. 24–26, 660–802. To the contrary, the objective medical evidence of record shows that Plaintiff's nausea and vomiting was rare and has improved. Tr. 25–27; *see* tr. 660, 733, 735, 770, 771, 803, 806, 818 (noting intermittent to no nausea and improvement with Zofran).

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility.

### III. Lay Testimony

Lastly, Plaintiff argues that the ALJ misinterpreted his mother's lay testimony. Pl.'s Br. 1. Generally, "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)). The reasons proffered by the ALJ for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). In other words, bias "in the abstract," such as a familial relationship, is not per se a germane reason to discredit a lay witness. *Dale v. Colvin*, 823 F.3d 941, 944–45 (9th Cir. 2016) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

Here, Plaintiff's mother—Rebecca R.—said that he had severe and sudden nausea and vomiting. Tr. 283. She said his daily activities included making coffee and, if he was feeling

stronger, preparing meals. Tr. 284. She said he was "very sedentary" due to health issues and rarely went out fishing or with friends. Tr. 285. She said his headaches, nausea, and vomiting could put him down for three hours or several days. *Id.* She said his symptoms were frequent but irregular. *Id.* She said the distance he could walk before needing to stop and rest and the length of time he needed to rest varied. *Id.* She said he could not pay attention to anyone when he had severe head pain and/or nausea. *Id.* She said he did what he could indoors and outdoors, but on many days he could not do much outside, tend to personal care, or prepare food. Tr. 287. She said he would have to stop doing chores due to sudden vomiting and had to pace himself. *Id.* She said he was very limited in his ability to go outside because he never knew when his nausea would occur. *Id.* She said he could drive and ride in a car, go out alone, and shop for groceries twice a week for 20 to 30 minutes. Tr. 288. She also drew vertical lines through each of the rows of boxes regarding his abilities. Tr. 286.

The ALJ gave little weight to Rebecca R.'s statement, finding that she overestimated Plaintiff's limitations and described symptoms that were inconsistent with the record as a whole. Tr. 27. Plaintiff reported nausea before January 2010. *Id.*; *see* tr. 796–78. However, Zofran has since controlled it, and it has been rare from then on. Tr. 27; *see* tr. 733 (noting continued nausea but no vomiting in January 2010), 723 (noting improved nausea as of March 2011), 715 (prescribing more Zofran, which seemed to be improving Plaintiff's nausea in December 2011), 702 (noting vomiting 6 times the week prior but none since in March 2012), 660 (noting intermittent nausea in June 2012), 678 (noting no nausea in November 2015).

The ALJ further found that the limitations Rebecca R. described were inconsistent with Plaintiff's testimony. Tr. 27. For example, Rebecca R. indicated that Plaintiff had memory loss

and difficulty sitting, standing, lifting, and doing other activities, which he denied. Tr. 27; *see* tr. 286, 52. The ALJ also opined that she described mental health limitations that were not corroborated by Plaintiff's mental health diagnosis and the record. Tr. 28; *see* tr. 286. Plaintiff argues that she drew a line through the boxes regarding abilities to redirect readers to her statement below and did not intend to indicate that he had problems in each area. Pl.'s Br. 1; *see* tr. 286. An ALJ's findings should be upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court is bound to uphold that interpretation. *Batson*, 359 F.3d at 1193 (internal citations omitted).

Here, the ALJ's interpretation may be unlikely given the continuity of the lines—which appear to be strike-throughs—and other statements Rebecca R. made. Vertical lines through each box could, however, be intended to indicate limitations in each area. Because the ALJ's interpretation is rational, it must be upheld. In any event, other issues with Rebecca R.'s testimony remain. She described Plaintiff as sedentary, but he performed substantial daily activities and worked for his parents. Tr. 27–28; *see* tr. 285, 48, 52–56. She also drastically understated his daily activities. *Compare* tr. 284 (Rebecca R. saying that Plaintiff made coffee and prepared meals if he was feeling stronger) *with* tr. 53–55 (Plaintiff testifying that he attended to his personal care, prepared meals, cleaned the house, vacuumed, shopped, did laundry, did yard work, took out the garbage, and went hiking). Further, she said Plaintiff had difficulty paying attention, which not corroborated by his mental health diagnosis and the objective medical evidence of record. Tr. 28; *see* tr. 286, tr. 660–802.

Lastly, the ALJ found that Rebecca R. could not be considered a disinterested third party witness whose statements were uninfluenced by her affection for Plaintiff and a natural tendency

to agree with the symptoms and limitations he alleged. Tr. 28. Although this alone is not a germane reason to discredit Rebecca R.'s testimony, it is relevant in light of her testimony's other shortcomings. *See Dale*, 823 F.3d at 944–45 (citing *Valentine*, 574 F.3d at 694).

The ALJ did not err in rejecting Rebecca R.'s testimony.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 21st day of May, 2019.

s/Michael J. McShane  
Michael J. McShane  
United States District Judge